BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE PACQUIAO-MAYWEATHER
BOXING MATCH PAY-PER-VIEW
LITIGATION

MDL DOCKET NO. 2639

## RESPONSE AND PARTIAL JOINDER IN SUPPORT OF
## MOTION FOR COORDINATION UNDER 29 U.S.C. § 1407 AND
## OPPOSITION TO PROPOSED TRANSFER VENUE

Pursuant to 28 U.S.C. § 1407 and the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs Christopher Vallaro, Bill Brady, Jaqueline Mora Rodriguez, Gabriel Ivan Santos, Sean Michael Crabtree and David F. Bradley ("Plaintiffs"), represented by Gainey McKenna & Egleston, respectfully submit this Memorandum of Law in Response and Partial Joinder to the Motion for Transfer Venue and submit that all of the related cases should be centralized in Eastern District of New York or, in the alternative, in the Eastern District of Michigan.

Plaintiffs represented by Gainey McKenna & Egleston are the putative representatives of the class alleged in the following cases:

*Christopher Vallaro v. Emmanuel Pacquiao, et al.*, Case No.: 1:15-cv-02637
Eastern District of New York
Class Action Complaint filed May 7, 2015
Case assigned to Judge Kiyo A. Matsumoto and Magistrate Judge Robert M. Levy

*Bill Brady v. Emmanuel Pacquiao, et al.*, Case No.: 1:15-cv-21778
Southern District of Florida
Class Action Complaint filed May 11, 2015
Case assigned to Chief Judge K. Michael Moore and Magistrate Judge Chris M. McAliley

*Jaqueline Mora Rodriguez and Gabriel I. Santos v. Emmanuel Pacquiao, et al.*, Case No.: 3:15-cv-01550
District of Puerto Rico
Class Action Complaint filed May 8, 2015

Case not yet assigned

*Sean Michael Crabtree v. Emmanuel Pacquiao, et al.*, Case No.: 3:15-cv-00592
Middle District of Tenn.
Class Action Complaint filed May 26, 2015
Case assigned to Senior Judge William J. Haynes, Jr. and Magistrate Judge Joe Brown

*David F. Bradley v. Emmanuel Pacquiao, et al.*, Case No.: 2:15-cv-11936
Eastern District of Michigan
Class Action Complaint filed May 29, 2015
Case assigned to Judge Gershwin Drain and Magistrate Judge Elizabeth Stafford.

This litigation involves Defendants'[1] common scheme surrounding the intentional and fraudulent omissions relating to injuries suffered by Defendant Pacquiao prior to the fight between Pacquiao and Mayweather held May 2, 2015, in Las Vegas, Nevada (the "Fight"). Plaintiffs in these related cases each seek to represent a putative class of persons who paid money to watch the Fight and/or bet on the Fight, which is conservatively estimated to have brought in over $300 million in sales alone.

The Fight was billed as the "Fight of The Century." However, the Fight is now instead being referred to as the "Fraud of the Century" because Pacquiao, and other defendants, intentionally failed to disclose, as required, a shoulder injury that they were aware Pacquiao suffered from in advance of the Fight. This concealment and failure to disclose allowed Pacquiao to enter the Fight injured and unable to fully perform. This injury was unknown to the public, including Plaintiffs in the related actions and the various classes.

Each related action contains allegations that Defendants intentionally concealed the injury from the public. Defendants' actions in failing to disclose that Pacquiao was injured prior to the Fight, while still promoting and advertising the Fight to Plaintiffs and members of the

---

[1] Defendants are Top Rank, Inc., Emmanuel Pacquiao ("Pacquiao"), Robert Arum, Michael Konz, Todd Duboef, Floyd "Money" Mayweather, Jr. ("Mayweather"), Mayweather Promotions, LLC, Showtime Networks, Inc., Home Box Office, Inc., Esteban Rodriguez, Comcast Corporation, AT&T, Inc. and DirecTV.

2

classes and the public as an honest sporting event between two healthy and uninjured participants, were a substantial contributing cause of the injury and harm Plaintiffs and the members of the classes suffered as they were deprived of what they paid for and were injured financially.

Based on the foregoing, the related actions all seek restitution, damages and other relief for class members who paid for a fight that was promoted and advertised as a legitimate sporting event, but were denied the pleasure off viewing that event after paying their fees or placing their bets because Pacquiao and the other defendants failed to disclose the known injuries. The motive for concealing the truth was to maximize sales and other fight revenue for Defendants and not cause a delay in receiving their payments because if the truth was known, the sales of the Fight would have declined, along with Defendants' payments.

Given the closely related nature of the various actions filed, Plaintiffs believe that centralization before a single judge is appropriate. All of these related actions satisfy the requirements for transfer under Section 1407 because they involve one or more common questions of fact. Transfer of these cases will also promote the convenience of the parties and witnesses, and will advance the just and efficient conduct of these actions. Moreover, transfer and consolidation of these related cases is appropriate because all of the actions concern the same fraudulent conduct of the Defendants and their misleading practices in promoting and advertising the Fight.

Accordingly, if there was no pretrial centralization of these cases, Defendants and relevant non-parties would be required to respond to similar discovery responses, seeking similar information, and to offer the same witnesses for multiple depositions across multiple cases. Likewise, if there is no centralization, there is a danger that different courts will issue conflicting

3

decisions on important issues leading to conflicting results. Transfer and consolidation, therefore is required to satisfy the convenience of the parties and witnesses, and promote the just and efficient resolution of these cases.

Accordingly, Plaintiffs respectfully join in the instant motion to the extent that it seeks centralization of all the related cases in one judicial forum but oppose California and other suggestions and instead request this Panel transfer all of the related actions to the Eastern District of New York, the most favorable district for centralization. The reasons for selecting the Eastern District of New York are: (a) Many of the relevant documents and witnesses are located in New York City; (b) New York City has the strongest nexus with this litigation; (c) New York City is geographically convenient and easily accessible to all parties and witnesses; (d) the Eastern District of New York has the resources to handle MDL consolidation and is a highly efficient jurisdiction with a low MDL caseload relative to other suggested venues. Accordingly, Plaintiffs pray that this Honorable Panel transfer and consolidate the cases to the United States District Court for the Eastern District of New York before the Honorable Judge Kiyo A. Matsumoto who has the first filed case in that district for coordinated and/or consolidated pre-trial proceedings.

## ARGUMENT

**A. THESE ACTIONS AND ANY TAG-ALONG ACTIONS ARE APPROPRIATE FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407(a).**

Plaintiffs agree with the previous submissions filed in this MDL proceeding arguing that transfer and centralization is appropriate under 28 U.S.C. § 1407(a) and thus will not belabor the point any further. *See e.g.*, MDL No. 2639, Dkt. Nos. 1-1, 6 and 9.

**B. THE RELATED ACTIONS SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF NEW YORK FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS BEFORE HONORABLE JUDGE KIYO A. MATSUMOTO**

When a particular harm causes complaints to arise in geographically dispersed areas, and has in fact resulted in a "wide array already of suggested transferee districts, it is clear that any one of a large number of districts would qualify as an appropriate transferee forum[.]" *In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001). Here, the Eastern District of New York is the most appropriate transferee district based on the fact that: (1) it is the district where a significant number of cases have been filed; (2) it is the district with the largest or one of the largest concentrations of Class members comprising the population dense counties of Brooklyn, Queens, Nassau and Suffolk; (3) the district has a strong nexus to the litigation because many of the relevant documents and witnesses are located within the same city, namely New York City; (4) is a major metropolitan court; (5) it is conveniently located and serviced by a number of major airports; (6) is not overtaxed with other multidistrict dockets; and (7) possesses the necessary resources, facilities, and technology to devote the substantial time and effort to pretrial matters that this complex docket is likely to require. As demonstrated by this Panel's decision in *In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, when the injuries do not cluster around an injury "epicenter," the questions then become which district is most capable of accommodating all the litigants as a whole, has its door open, and can manage this case efficiently. In this endeavor, the Panel may consider, *inter alia*, the location of the parties, witnesses and the evidence; the accessibility of the location to all parties and witnesses for travel purposes; the efficiency and resources of the Court to handle the MDL; and the proposed Judge's availability and experience in handling MDLs.

Moreover, the Eastern District of New York is also the appropriate choice for the following additional reasons:

5

- The docket of the Eastern District of New York is conducive to the swift and efficient litigation of this matter, which concerns a far-reaching, country-wide fraud.

- The Eastern District of New York is among the most efficient U.S. District Courts, moving cases to trial and final disposition faster than most other Districts.

- According to the most recent Federal Court Management Statistics, the Eastern District of New York ranks as a top district in the country in significant measures of docket conditions:[2] the median time from filing to disposition in civil cases.[3] The median time from filing to disposition currently stands at 8.8 months, placing it into first place of all the District Courts in the Second Circuit.

Hence, these factors support transfer to the Eastern District of New York. In sum, the Eastern District of New York is the most appropriate forum.

1. **The Eastern District of New York is a District with Numerous Filed Cases**

With regard to the number of cases filed across the country, while many of the pending cases are in different districts, New York City has a concentration of the many filed cases with four (4) in Eastern District of New York and three (3) across the East River in the Southern District of New York. As such, this factor is either neutral or favors the Eastern District of New York.

---

[2] The significance of this statistic is well established. *See In re Nat'l Student Mktg. Litig.*, 368 F. Supp. 1311, 1318 (J.P.M.L. 1972) (noting the importance of median time to disposition when comparing districts).

[3] *See* Federal Court Management Statistics for Eastern District of New York, September, 2014 *U.S. District Courts—Median Time Intervals from Filing to Disposition of Civil Cases*, Table C-5, available at http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2014/appendices/C05Sep14.pdf.

### 2. The Eastern District of New York Has A Strong Nexus to the Litigation

One of the most important factors in this case will be what did the two pay-for-view promoters, Defendants Showtime Networks, Inc. and Home Box Office, Inc. know about Defendant Pacquiao's injury. Both of these Defendants have their headquarters in New York City in which the Eastern District of New York is located. In addition, another corporate Defendant, Comcast Corporation, has its headquarters in Philadelphia, a short train ride away.

### 3. The Eastern District of New York is Geographically Convenient to the Evidence, Parties and Witnesses in the Related Actions

Keeping in mind that centralization almost always poses an inconvenience to some participants, the Panel should consider the convenience of the parties to the litigation as a whole. *See* 28 U.S.C. § 1407(a) (Panel may transfer related actions upon "its determination that transfers . . . will be for the convenience of the parties and witnesses . . . ."). The Eastern District of New York is located in Brooklyn, New York, which is well served as a transportation hub. Besides the three major airports at LaGuardia, JFK and Newark, the area is also served by several smaller airports: Long Island MacArthur Airport in Islip, New York, Westchester County Airport in White Plains, New York, Teteboro Airport in New Jersey (approximately 23 miles to the courthouse) and the Stewart International Airport in Newburgh, New York.

All of these factors support consolidation in the Eastern District of New York.

### 4. The Eastern District of New York Is Very Efficient and Has the Most Favorable Caseload

As the Panel noted in *In re Phenylpropanolamine (PPA) Products Liab. Litig.*:

> In concluding that the Western District of Washington is the appropriate forum for this docket, we note that centralization in this district permits the Panel to effect the Section 1407 assignment to a major metropolitan court that i) is not currently overtaxed with other multidistrict dockets, and ii) possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require.

7

173 F. Supp. 2d 1377, 1379-80 (J.P.M.L. 2001). The Eastern District of New York has a proven track record in handling its case load expeditiously. As noted above, the Eastern District of New York takes only an average of 8.8 months for a civil action to proceed from filing to disposition – this places the Eastern District *1st in the Second Circuit* in the time it takes to dispose of its total number of cases. *See, e.g., In re Listerine Total Care Mouthwash Mktg. and Sales Practices Litig.*, 764 F. Supp. 2d 1354, 1355 (J.P.M.L. 2011).

In addition, the Eastern District of New York presently has only 9 MDL proceedings on its docket, as compared with the Southern District of New York which has 39 and the Central District of California[4] which has 14, two other venues suggested.[5]

### 5. The Honorable Judge Kiyo A. Matsumoto is the Ideal Transferee Judge

Judge Matsumoto is an experienced and capable jurist who is well-qualified to preside over this MDL. Judge Matsumoto has significant experience handling complex class actions, and is therefore intimately familiar with, and can efficiently handle, issues that are likely to arise

---

[4] Plaintiffs disagree with Plaintiff Tjaden (Dkt. No. 1 at 12, 13-16) that the related actions should be transferred to the Central District of California for these reasons: (1) the Central District of California does not have "the largest number of cases . . . filed" (research shows there are eight (8) actions filed in the Central District of California). As of May 26, 2015, our research shows that thirty-three (33) federal court cases have been filed across the country and at least seven (7) have been filed in New York City; (2) it currently is impossible to know whether the Central District of California has "the largest concentration of Class members." Plaintiff Tjaden's argument is based on a no more than a guess and supported by no authority; (3) as a Fight watched nationwide, where consumers were defrauded in each and every district, no particular district has any greater relationship to the dispute than another. Plaintiff Tjaden even concedes that there is no "injury 'epicenter'" in this case. In addition, the most important sources of evidence to establish class members' identities and amounts of damages suffered will be in the records of the pay per view promoters at their corporate headquarters in New York City. Last, Plaintiffs Nedidl, *et al.* assert that these cases should be centralized in the District of Nevada, and make the unsupported claim that "there is a distinct possibility that Nevada law may apply to all claims in these cases." Dkt. No. 9 at 12. Undoubtedly, Plaintiffs in various states will argue for the application of the laws of the states in which they were defrauded especially if they have state consumer protection laws under which they will seek redress.

[5] *See* MDL Statistics Report – Distribution of Pending MDL Dockets, October 15, 2014, available at http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-16-2015.pdf .

in these related actions. Moreover, Judge Matsumoto is not currently presiding over any pending MDLs.[6]

## C. IN THE ALTERNATIVE, THE RELATED ACTIONS SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF MICHIGAN FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS BEFORE HONORABLE JUDGE GERSHWIN DRAIN

Plaintiffs assert that considerations of trial management and docket congestion support retaining the case, in the alternative, in the Eastern District of Michigan, where the case would be resolved sooner. Pursuant to 2015 Federal Court Management Statistics for the Eastern District of Michigan and the Central District of California, in 2014, judges in the Eastern District of Michigan had an average of 3 pending MDL cases, while judges in the Central District of California had an average of 14 MDL cases. *See* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-16-2015.pdf. In addition, the same statistics also show that the median time between filing and disposition of civil cases in the Eastern District of Michigan was 8.4 months, the second best record of district courts in the Sixth Circuit. In addition, the Eastern District of Michigan has legalized gambling, making it a near certainty that many persons placed wagers on the outcome of the Fight. Further, Judge Drain of the Eastern District of Michigan has been assigned to the first filed case in that District. Judge Drain is an experienced jurist, well-capable of handling a multi-district litigation. Also, the Eastern District of Michigan is well-served by the international airport in Detroit. Last, Detroit is centrally located between the East and West coasts of the United States, thus the travel burden would be borne equally by all participants. Accordingly, in the alternative, Plaintiffs suggest that transfer of all related matters to the Eastern District of Michigan is warranted.

---

[6] *Id.*

9

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Panel consolidate all related actions pursuant to 28 U.S.C. § 1407 and transfer them to the Eastern District of New York, or, in the alternative, to the Eastern District of Michigan.

Dated: May 29, 2015

Respectfully submitted,

**GAINEY McKENNA & EGLESTON**

By: */s/ Thomas J. McKenna*
    Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY 10016
Phone: (212) 683-3400
Fax: (212) 683-3402
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Counsel for Plaintiffs Christopher Vallaro, Bill Brady, Jaqueline Mora Rodriguez, Gabriel Ivan Santos, and Sean Michael Crabtree*

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE PACQUIAO-MAYWEATHER
BOXING MATCH PAY-PER-VIEW
LITIGATION

MDL DOCKET NO. 2639

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Related Actions has been electronically filed with the Judicial Panel on Multidistrict Litigation by using the CM/ECF system; which will send notice of electronic filing to all parties and counsel of record, and served via First Class Mail to the following Defendants:

Emmanuel Pacquiao
c/o MPProductions USA, Inc.
3980 Howard Hughes Parkway, Ste. 58
Las Vegas, NV 89169

Michael Konz
Robert Arum
Todd Duboef
Top Rank, Inc.
c/o Top Rank, Inc.
748 Pilot Road
Las Vegas, NV 89169

Showtime Networks, Inc.
c/o United States Corporation Company
2711 Centerville Road, Ste. 400
Wilmington, DE 19808

Home Box Office, Inc.
c/o The Prentice Hall Corporation System, Inc.
c/o Corporation Service Company
2711 Centerville Road, Ste. 400
Wilmington, DE 19808

Esteban Rodriguez
O'Melveny & Myers, LLP
400 South Hope Street, Office 1475
Los Angeles, CA 90071

Comcase Corporation
Comcast Center
1701 JFK Blvd.
Philadelphia, PA 19103

AT&T, Inc.
208 South Akard St.
Dallas, TX 75202

DirecTV
2230 East Imperial Highway
El Segundo, CA 90245

DATED: May 29, 2015

                                              Respectfully submitted,

                                              **GAINEY McKENNA & EGLESTON**

By:    /s/ *Thomas J. McKenna*
        Thomas J. McKenna
        440 Park Avenue South, 5th Floor
        New York, NY 10016
        Phone: (212) 683-3400
        Fax: (212) 683-3402
        Email: tjmckenna@gme-law.com

        *Counsel for Plaintiff Sean Michael Crabtree*

        *(and Plaintiffs Christopher Vallaro, Bill Brady, Jaqueline Mora Rodriguez and Gabriel Ivan Santos in other pending cases in this MDL proceeding)*