IN THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| IN RE MATTER OF | : | |
|---|---|---|
| Pacquiao-Mayweather Boxing Match Pay-Per-View Litigation | : : : | |
| | : | MDL No. 2639 |
| | : | |

**************************************************************************

O<span>PPOSITION</span> TO MOTION FOR TRANSFER OF RELATED ACTIONS FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDING PURSUANT TO §1407

## INTRODUCTION

Plaintiff, Bonnie Johnson, opposes centralization, pursuant to §1407, of related pending actions. These actions, while large in numbers do not involve common, numerous, and complex questions of fact sufficient to warrant centralization. It is preferred that the parties informally coordinate to resolve legal issues and ensure efficient litigation of this case.

## BACKGROUND

To date, within the federal judiciary, there are approximately over thirty putative class actions pending in approximately ten states with approximately four actions pending in Nevada or various districts within California and Florida. There are approximately four nationwide putative class actions are pending in Nevada; two in Illinois; two in California however, most pending actions comprise of statewide class action suits.

This motion for multi district litigation arises out of the massive rush to file putative class actions on behalf of consumers, who viewed the professional boxing match between the world's two best boxers Manny Pacquiao and Floyd Mayweather Jr. on May 2, 2015, which was advertised

1

as the fight of the century. The prefight publicity was the most publicity a boxing match has ever had in the history of the boxing. Both fighters engaged in numerous press conferences; displayed footage of their training; and presented that they were in "tip top shape" and ready to fight. It was the fight many boxing fans have wanted to see for years but were unsure would ever occur. HBO titled its prefight publicity specials Floyd Mayweather/Manny Pacquiao: AT LAST.

The essential facts of this case are undisputed and stem from the Defendants' public statements. It is undisputed that approximately three weeks prior to the fight Manny Pacquiao suffered a severe injury (a torn rotator cuff in his right shoulder) that significantly reduced his ability to perform. It is undisputed that throughout the remainder of his training Manny Pacquiao consumed a powerful non-steroidal pain killer to continue with his preparation for the fight. Just hours prior to the fight, the Nevada Athletic Commission denied Manny Pacquaio's request to consume pain killers in order to fight without the pain in his shoulder. Manny Pacquiao lost the fight and most felt was just simply a boring fight. The day after the fight Manny Pacquiao publicly admitted that he only had about 60% use of his right arm and witnesses, who he trained with confirmed the injury and intent to keep it confidential. Manny Pacquiao's doctor also made a public statement concerning his diagnosis and plan treatment consisting of surgery and approximately one year of rehabilitation

Prior to Manny Pacquaio's announcement of his injury, fans and commentators around the world were highly disappointed and baffled with the performance of the fight. The public interest in the fight far exceeded expectations drawing in many fans who do not regularly follow boxing. All were disappointed. Manny Pacquiao was under too much pressure from promoters, HBO, Showtime, and others to deliver the fight of the century that would reap ground breaking profits. Pay per view prices for the fight were higher than usual and tickets were also quite expensive.

The defendants and the definition of the class vary among the competing class action suits but all are seeking refunds on behalf of consumers who created profits for the defendants because of failing to disclose Manny Pacquiao's injury to the public prior to fight. Every suit names Manny Pacqauio and his promotion company, Top Rank, Inc; Floyd Mayweather Jr. and his promotion company; Mayweather Promotions and many others who gained from the profits of the fight. Most class action suits seek damages on behalf of pay per view purchasers but some complaints go as far as ticket holders or bet wagers.

## ARGUMENT

### I. Legal standard

The Judicial Panel on Multidistrict Litigation, through 28 U.S.C.A. § 1407, has the authority to centralize related actions in a single federal district for coordinated and consolidated pretrial proceedings in a multidistrict litigation. §1407 (a) requires the Panel to consider three criteria In determining whether to create multidistrict litigation, the statute requires that the Panel must find that: the related actions involve one or more common questions of fact; the transfer serve the convenience of the parties and witnesses; and the transfer must promote the just and efficient conduct of the litigation. The decision to centralization involves a fact and legal intensive inquiry into the potential outcome of litigation. *See* Newberg on Class Actions § 6:47 (5th ed.).

### II. The factual questions presented in these actions are largely undisputed and are neither numerous nor complex.

The plain reading of §1407 requires that "one or more common questions of fact are pending in different districts" for this panel to transfer these actions "upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will

promote the just and efficient conduct of such actions."28 U.S.C.A. § 1407(a). The panel has interpreted §1407 to require that there must be common disputed, complex, and numerous facts among all the actions subject to transfer and has consistently denied centralization when any of these factors are lacking. *In re: Nutella Mktg. & Sales Practices Litig.,* 804 F. Supp. 2d 1374, 1375 (U.S. Jud. Pan. Mult. Lit. 2011)(denying centralization with five actions pending in two districts because while "the actions may share some factual questions regarding the common defendant's marketing practices, but these questions do not appear complicated" or numerous. *In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.,* 560 F. Supp. 2d 1374, 1376 (U.S. Jud. Pan. Mult. Lit. 2008)(denying centralization with sixty eight actions pending in over six districts because common questions of fact among these actions were not sufficiently complex and/or numerous); *In re: Skinnygirl Margarita Beverage Mktg. & Sales Practices Litig.,* 829 F. Supp. 2d 1380, 1381 (U.S. Jud. Pan. Mult. Lit. 2011)(denying centralization of seven class action cases pending in seven districts in part because "the central allegation that Skinnygirl Margarita beverage was marketed as being all natural despite some level of sodium benzoate appears to be undisputed, and plaintiffs have failed to detail how pretrial proceedings would benefit from centralization. Consequently, the common material disputed facts may be limited in number").

Parties in favor of centralization fail to acknowledge that the factual allegations that create liability are largely undisputed, simple, and small in numbers. *See Mot. for Centralization* ECF1-1; *Memo in Support* ECF 46, 48,68,71. All complaints plead factual allegations based upon the public statements made by the Defendants namely Manny Pacquiao disclosing to the public after his fight that he could not adequately perform because he severely injured his shoulder during training a few weeks before the fight. It is undisputed that this fight was heavily promoted as the fight of the century, consumers paid significantly higher prices to view the fight through pay per

4

view or live, and many consumers were disappointed with the performance of the fight. The common issues in the pending actions are legal not factual. The class action complaints vary in the legal claims with most complaints pleading claims based on state consumer protection statutes and all pleading various common law claims. *See In re: Real Estate Transfer Tax Litig.,* 895 F. Supp. 2d 1350, 1351 (U.S. Jud. Pan. Mult. Lit. 2012)(denying centralization because the factual questions, which were "largely undisputed and are neither numerous nor complex and the issues in the cases were primarily legal"). Therefore, the primary questions in this case are simply whether each state's laws will create liability for the Defendants' openly admitted conduct.

Even if there are some common factual questions as to who else was aware of the extent of Manny Pacquiao's injuries, promoted the fight, and profited from the fight, that is not sufficiently complex or numerous to justify centralization. *See e.g. In re AriZona Beverage Co. Products Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1369 (U.S. Jud. Pan. Mult. Lit. 2009)( denying centralization of three statewide class actions because although "undoubtedly, the actions share some factual questions as to whether defendants deceptively marketed their iced tea beverages as "100% Natural" or "All Natural," when those beverages contain high fructose corn syrup, those questions are not sufficiently complex and/or numerous); *In re: £LVNV Funding, LLC, Time-Barred Proof of Claim Fair Debt Collection Practices Act (FDCPA) Litig.,* No. MDL 2611, 2015 WL 1518661, at *1 (U.S. Jud. Pan. Mult. Lit. Apr. 2, 2015)(denying centralization because although "these actions share some factual questions arising from plaintiffs' allegations that defendants filed one or more proofs of claim in their bankruptcy proceedings to collect a consumer debt when the applicable statute of limitations on the collection of that debt had expired, these common questions are not sufficiently complex or numerous."); *In re: £Healthextras Ins. Mktg. & Sales Practices Litig.,* 24 F. Supp. 3d 1376 (U.S. Jud. Pan. Mult. Lit. 2014)( denying

centralization with six actions pending in five districts because, "though these six actions do share certain factual issues regarding the sales and marketing of disability insurance policies to holders of various credit cards, the key issue in all cases is legal in nature…The question in each case is whether the subject policies were issued in compliance with the law of the state in which that particular case was brought") Some plaintiffs raised the issue that Floyd Mayweather's promoters publicly admitted that they knew all that occurred in Manny Pacquiao's training camp. Perhaps Floyd Mayweather Jr (Pacquiao's opponent) and others who promoted the fight knew of the extent of Manny Pacquiao's injury but that is neither complicated nor numerous and only requires employing straightforward discovery techniques.

### III. There is no convenient forum for the parties and witnesses.

Selection of a transferee district is most straightforward when the litigation has a strong geographical nexus to a particular forum. *See* In re *Pfizer Inc. Securities, Derivative & Erisa Litigation*, 374 F. Supp. 2d 1348, 1350 (J.P.M.L. 2005) (concluding that "this litigation has a strong New York nexus" where Pfizer, the defendant in at least 21 of 29 actions, had its headquarters; where "many individual defendants reside"; where 23 of the 29 actions are already pending; where actions alleging both ERISA and federal securities claims are pending along with shareholder derivative actions; and where all parties agree that some form of centralization should occur); *In re Reciprocal of Am. (ROA) Sales Practices Litig.*, 281 F. Supp. 2d 1356, 1358 (J.P.M.L. 2003)( holding the strongest nexus to this litigation among the districts with actions pending is where witnesses and documents are found).

In the instant case, there are three forums which have a strong nexus to the case and at this early stage, it is difficult to determine, which forum has the strongest connection. Defendants vary among the suits; however, the common defendants are located in Las Vegas, NV, Los Angeles,

6

CA, and New York, NY, which is where relevant witnesses and documents will be available. The most critical documents will pertain to Manny Pacquiao's injuries and profits from the fight. Documents pertaining to the Nevada Athletic Commission will be located in Nevada. Manny Pacqiao's injuries and medical records are available in California. Profits earned from the defendants will be available in many states because the defendants are the fighters, the promotion companies, cable tv networks, cable tv providers located across the country. *See* In re *Sundstrand Data Control, Inc. Patent Litig.,* 443 F. Supp. 1019, 1021 (J.P.M.L. 1978)(holding the appropriate transferee district is where the parties argue most of the relevant documents and witnesses are found). At this point, the parties certainly do not know whether it would be necessary for any witnesses or parties to physically appear at any pretrial hearings. Witnesses are also located all over the country but with most in California, Nevada, or New York. Therefore, it's simply too early to select the most convenient forum for the parties and witnesses.

The parties must be willing to coordinate discovery informally thereby eliminating any inconveniences that may arise from centralization. *Cf. In re: Prop. Assessed Clean Energy (Pace) Programs Litig.,* 764 F. Supp. 2d 1345, 1346-47 (U.S. Jud. Pan. Mult. Lit. 2011)(with seven actions pending in four districts and common factual issues largely undisputed and primarily common legal questions left to be decided, convenience of the parties is also lacking because "centralization threatens to inconvenience plaintiffs by disrupting this preexisting cooperative relationship" where plaintiffs are receptive to informal efforts to coordinate litigation and lessen duplicative activity). For e.g., if five suits elect to depose a witness at the same time and all the other suits do not carry out their due diligence to ensure that it is necessary to subject that witness to a second deposition and incur traveling expenses and fees, they are not adequately representing the class through preservation of resources and cost. Whether not this case is centralized, ethics

requires that informal coordination of discovery be a top priority for all pending suits. *See* Model Rules of Professional Conduct Rule 1.5 Fees (a lawyer shall not charge a client unreasonable fees and cost)

Plaintiff Bonnie Johnson, in the event an MDL is created, prefers the Eastern District of New York or in the alternative, Central District of California.

**IV. MDL is not necessary to ensure a just and efficient resolution to this case.**

Because this case comprises of many statewide and nationwide competing class actions that do not involve common, complex, numerous questions of fact, the only factor that may warrant centralization is promoting the just and efficient conduct of litigation; however, just and efficient litigation is feasible without creating MDL. This case compromises of mostly statewide class actions on behalf of a state where their plaintiff resides but many complaints plead only nationwide without plaintiffs, who reside in each state or some plead statewide in the alternative to nationwide. This panel should understand that,

> Competing class actions undermine the efficiency and fairness goals of the class action mechanism in two ways. First, the proliferation of competing class actions and the resulting duplication of efforts waste the resources of defendants and courts and deprives courts of effective jurisdiction over their dockets. Second, plaintiffs' attorneys, in their race to the finish line with its windfall award of fees, can settle the class's claims for a suboptimal price, engaging in a so-called 'reverse auction'" and thereby compromising their clients' interests and those of society at large…..As a result, defendants can set the terms and play teams of plaintiffs' attorneys off one another, leading to a 'reverse auction'….Plaintiffs' attorneys, working on contingency fees and knowing that others are in line to settle if they do not, accept the defendant's offered terms in order to ensure a profitable return on their investment in the litigation…Furthermore, by encouraging collusion and minimizing damage awards, competing class actions impact society at large, which relies on effective class litigation to provide deterrence against illegal and tortious corporate behavior.

Andrew S. Weinstein, Avoiding the Race to Res Judicata: Federal Antisuit Injunctions of Competing State Class Actions, 75 N.Y.U. L. Rev. 1085, 1088-1091 (2000). It is likely plaintiffs,

who favor centralization fear adverse consequences to the class absent creation of MDL but for the reasons argued below, they should not have such concern.

### A. Overlap between the statewide and nationwide class members is not worthy of concern.

First and foremost, many courts have addressed the nationwide certification of a class with claims arising out of the fraudulent concealment of the quality of the goods is unmanageable class action litigation because of the differences in the common law claims and state consumer protection statutes of each state. Illinois currently has pending two nationwide class actions suits with one suit, which pleads statewide in the alternative. The Illinois suit, which pleads statewide in the alternative is pending before District Judge Amy J. St Eve, who has ruled that this specific type of class action fails nationwide class certification because of the material differences in state laws. *Siegel v. Shell Oil Co.,* 256 F.R.D. 580, 584 (N.D. Ill. 2008)(holding when there is fraudulent concealment about the quality of the goods, the place of purchase of the goods is the applicable consumer protection statute or common law claims and the unjust enrichment claims and consumer protection statute of each state vary significantly thereby failing class certification. District Judge Eve, who was affirmed by the Seventh Circuit, also denied statewide certification of consumer protection claims and the unjust enrichment claims because each "plaintiff must show that he was somehow deceived", which defeats the predominance requirement. *Siegel v. Shell Oil Co.,* No. 06 C 0035, 2009 WL 449073, at *3 (N.D. Ill. Feb. 23, 2009) *aff'd,* 612 F.3d 932 (7th Cir. 2010)(holding that absent proof why each plaintiff purchased the goods, it cannot be proven that defendants caused harm).

There are currently four pending nationwide class actions suits in the District of Nevada and others in various districts in California based upon Nevada or California law but the Ninth Circuit, in *Mazza v. Am. Honda Motor Co.* has ruled, for purposes of the choice of law analysis, that each state has interest in applying its consumer protection laws to transactions that took place within its borders and there are material differences in the state's laws. 666 F.3d 581,590-594 (9th Cir. 2012). In *Mazza*, plaintiffs brought a nationwide putative class action actions alleging that automobile manufacturer omitted material information in their advertisements about the characteristics of automobile braking system and similar to the case at bar, plead causes of action under California Business and Professions Code sections prohibiting acts of unfair competition and false advertising, unjust enrichment, and for violation of California's Consumer Legal Remedies Act. The Ninth Circuit further ruled that statewide class certification of California residents failed because "reliance" upon the advertisement created individualized issues that defeated the predominance requirement. *Id.* Thus, plaintiff Robert Neidl's (and all related actions) contention that MDL should be created in the District of Nevada because Nevada law might apply is not only irrelevant to the consideration of creating MDL but it is incorrect. *Pl's Partial Joinder in Support of Centralization* p.12 ECF 48. The MDL court "must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice-of-law rules." *In re Vioxx Products Liab. Litig.,* 478 F. Supp. 2d 897, 903 (E.D. La. 2007)(citing *Ferens v. John Deere Co.,* 494 U.S. 516, 524 (1990). Numerous class actions based on state law claims complicates centralization because the MDL Judge must apply many different choice of law rules which would likely require the transferee Judge to remand the cases to their respective transferor courts for certain pretrial issues.

Virtually every district where an action is pending has ruled that nationwide certification for the particular claims raised in this case is not feasible. *See* e.g. *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 159 (S.D.N.Y. 2008)(citing many district courts that denied nationwide certification based upon violations of consumer protection laws of each jurisdiction). *See also Spencer v. Hartford Fin. Servs. Grp., Inc.,* 256 F.R.D. 284, 305 (D. Conn. 2009)(denying nationwide certification of unjust enrichment claims because the variation in state laws are too complex); *Romero v. Allstate Ins. Co.,* 52 F. Supp. 3d 715 (E.D. Pa. 2014)(denying nationwide certification of unjust enrichment claims because of the variation in state laws). Thus overlap between nationwide and statewide classes does not need centralization to resolve the potential conflict.

Some courts, however, when there is a nationwide settlement, ultimately ignore the differences in state law or the choice law rules but here they will face many obstacles. . See e.g. *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 159 (S.D.N.Y. 2008)(citing many cases where the Court ignored material differences in state law for purposes of nationwide settlement but where a merchant fraudulently concealed information about the nature of the goods in their marketing, differences in the applicable state laws of consumer protection and unjust enrichment "go to the heart of Settlement Class members' substantive claims, and thus undermine the Settlement Class's cohesiveness. Therefore, certification of the Settlement Class is especially-inappropriate, despite the existence of the Settlement."). If counsel for any pending suits attempts to rush and settle on a nationwide basis, they will be burdened by many objections from plaintiffs in competing actions seeking to represent the citizens of their state for transactions that took place in their state. Clearly, issues of fairness and adequacy of representation will very likely prohibit any settlement that seeks to compensate only the firm seeking a nationwide settlement. Even if,

without a proper legal basis, a firm is successful in acquiring Court approval of a nationwide settlement, despite many objections, they will very likely have to entertain an appeal.

Moreover, this panel has held absent numerous and complex questions of fact, limited overlap among class actions alone is insufficient to warrant centralization. *In re: £LVNV Funding, LLC, Time-Barred Proof of Claim Fair Debt Collection Practices Act (FDCPA) Litig.,* No. MDL 2611, 2015 WL 1518661, at *n 2 (U.S. Jud. Pan. Mult. Lit. Apr. 2, 2015) (denying centralization because three statewide class actions and one nationwide class action with a "lack of complex or numerous questions of fact…limited class overlap, alone is insufficient"). As argued *supra*, this case does not involve common numerous and complex questions of fact thus centralization cannot be created.

**B. Creating MDL will not prevent multiple or inconsistent pretrial rulings.**

The issues in this case are primarily legal and liability and class certification will vary from state to state thus multiple or inconsistent pretrial ruling will still occur in MDL. *In re: Skinnygirl Margarita Beverage Mktg. & Sales Practices Litig.*, 829 F. Supp. 2d 1380, 1381 (U.S. Jud. Pan. Mult. Lit. 2011)(holding "centralization may not prevent either conflicting or multiple rulings, because plaintiffs bring their claims under the laws of different states. Under some state laws, the state of mind or reliance by individual purchasers may be a critical factor; in others it may not. These issues would not involve common discovery.") *See also Mazza v. Am. Honda Motor Co.,* 666 F.3d 581,595-596 (9th Cir. 2012)(denying statewide certification under California law in part because "reliance" on the advertisement that omitted material information created individualized issues that defeated predominance). Movant argues that this case will like involve expert testimony to determine liability; however, the need for an expert will vary depending each state's laws and likely individualize discovery and pretrial rulings. *Mot. to Centralize* p.10 ECF[1-1]

Because this case is essentially going to boil down to many putative statewide class actions with classes members being residents of the state where the plaintiff resides, conflicting pretrial rulings are of little concern. *See* In re *Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 160-61 (S.D.N.Y. 2008) (denying nationwide certification because of the significant difference in the state's consumer protection statutes); *In re: Adderall XR (Amphetamine/Dextroamphetamine) Mktg., Sales Practices & Antitrust Litig.,* 968 F. Supp. 2d 1343, 1345 (U.S. Jud. Pan. Mult. Lit. 2013)(denying centralization, with 5 putative state class actions pending in 5 districts because of all the actions which "consist of indirect purchasers of Adderall XR, do not significantly overlap. Each of the plaintiffs avers claims based upon different state antitrust and consumer protection laws. Thus, the potential for conflicting pretrial rulings, particularly as to class certification, appears to be minimal").

### C. There are simple alternatives to centralization. .

This panel has routinely held regardless of the number of actions pending there are feasible alternatives to centralization. *In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.* involved antitrust claims based upon the insurance regulation and law of each state, and this panel denied centralization because there were no common questions of fact that were sufficiently complex and/or numerous although there were sixty eight actions pending in many districts. 560 F. Supp. 2d 1374, 1376 (U.S. Jud. Pan. Mult. Lit. 2008). "The parties can avail themselves of alternatives to transfer, which may include seeking consolidation of actions pending in multiple districts within the same state, to minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings." *Id*. (citations omitted). *See also In re: Narconon Drug Rehab. Mktg., Sales Practices & Products Liab. Litig.,* No. MDL 2598, 2015 WL 506365, at *1 (U.S. Jud. Pan. Mult. Lit. Feb. 5, 2015)(denying centralization with twenty seven

non class actions pending in eight districts because the common issues are not sufficiently complex or numerous and further holding that "these circumstances suggest that voluntary cooperation and coordination among the parties and the involved courts, particularly given the number of actions, is a preferable alternative to centralization to address any possibility of duplicative discovery or inconsistent pretrial rulings."); *In re: Real Estate Transfer Tax Litig.,* 895 F. Supp. 2d 1350, 1351 (U.S. Jud. Pan. Mult. Lit. 2012)(with seven actions pending in seven districts , there are still available alternatives to centralization may minimize whatever possibilities exist of duplicative discovery or inconsistent pretrial rulings); *In re Signal Int'l LLC Human Trafficking Litig.*, No. MDL 2554, 2014 WL 4050056 (U.S. Jud. Pan. Mult. Lit. Aug. 12, 2014)(denying centralization because informal cooperation among the attorneys consisting of consent orders to share discovery was preferred).

District courts within a state can consolidate, stay, or dismiss actions pending within their state or outside of their state as they see fit because they have broad discretion to control their dockets. *See Adams v. Cal. Dep't of Health Servs.,* 487 F.3d 684, 688 (9th Cir.2007). *See also Moreno v. Castlerock Farming & Transp., Inc.*, No. CIV-F-12-0556 AWI, 2013 WL 1326496, at *1 (E.D. Cal. Mar. 29, 2013)(citing *Plack v. Cypress Semiconductor,* 864 F.Supp. 957, 959 (N.D.Cal.1994) ("The filing of a successive, identical class action qualifies as abusive regardless of whether class certification was granted or denied in an earlier case; both scenarios entail unnecessary duplication. A class action identical in scope to an earlier certified class action is unnecessary because the class members' claims are already being litigated in the earlier action"); *Tara M. v. City of Philadelphia,* 1998 U.S. Dist. LEXIS 12184, *6–8 (E.D.Pa.1998) (earlier filed class action was certified and both class actions shared a named plaintiff; the later filed suit was dismissed); *James v. AT & T Corp.,* 334 F.Supp.2d 410, 413 (S.D.N.Y.2004) (second class action

suit almost identical to first class action suit with addition of new defendant is dismissed as duplicative). For actions pending among different districts, District Courts can also apply the first filed rule to eliminate duplicative actions. *Fisher v. Rite Aid Corp.*, No. CIV.A.RDB-09-1909, 2010 WL 2332101, at *2 (D. Md. June 8, 2010).

Districts Courts in California, Florida, New York, Illinois, Nevada, and Pennsylvania have multiple nationwide and statewide class action suits pending that can be consolidated, stayed, or dismissed. For *e.g.*, in the Central District of California, a recently filed class action complaint is simply an exact copy of a previous filed suit with a different plaintiff. *Compare* Mendez v. Pacquiao, et al 2:15cv03693 Central District of California *to* Sirota v. Pacquiao, et al 2:15cv03370 Central Dsitrict of California. Obviously, copycat complaints can be stayed, dismissed, or provided leave to amend to delete class claims. *Id.* The first filed rule may consolidate the nationwide actions pending in different districts but not the statewide actions because of the difference in the claims and the class members. *See Glover v. Ferrero USA, Inc.*, No. CIV.A. 11-1086 FLW, 2011 WL 5007805, at *5 (D.N.J. Oct. 20, 2011).(holding in the absence a finding of choice of law and class certification there are insufficient similarities between the statewide and nationwide class action suit to justify application of the first filed rule).

The parties can coordinate discovery and the number of actions do not interfere with the ability to do so. Counsel for the plaintiffs have already made attempts to coordinate in order to resolve legal issues and to ensure all cases move forward efficiently. Thus far, the parties have established conference calls, in person meetings, and an email list serv. The parties can also coordinate a discovery schedule that will alleviate cost and other burdens on counsel and the witnesses. It is in the best interest of parties and counsel's resources to coordinate discovery and ethics require plaintiff's counsel not to waste resources.

## CONCLUSION

Plaintiff, Bonnie Johnson, respectfully request this Panel deny centralization to allow each District to properly sort out its state laws and any conduct that impedes a just and efficient resolution of this case and for the parties to independently come together to conduct discovery.

        s/April Ademiluyi_____
        April Ademiluyi, Esq.(Bar No 29141)
        The Law Office of April T. Ademiliuyi
        10411 Motor City Dr Ste 750
        Bethesda, MD 20817
        Ph: 443-393-3984
        Fax: 443-393-0416